MANCHESTER (BORDEN v.). See Case No. 1,656.

MANCHESTER (ERICSSON v.). See Case No. 4,511.

## Case No. 9,004.

MANCHESTER et al. v. HOTCHKISS.

[13 Int. Rev. Rec. 125; 10 Am. Law Reg. (N. S.) 379.]

District Court, D. Rhode Island. April 17, 1871.

PLEADING IN ADMIRALTY — PERSONAL PRIVILEGE —WAIVER— LIBEL IN PERSONAM—CIVIL SUIT—JUDICIARY ACT.

[1. A respondent to a suit in personam. whose vessel is attached because personal service cannot be made in the district, does not waive his right to plead to the jurisdiction by filing a stipulation to secure the release of his vessel.]

[2. A libel in personam is not a "civil suit," within the meaning of the eleventh section of the judiciary act of 1789 (1 Stat. 78), requiring the defendant to be a resident of the district within which suit is brought. Atkins v. Fibre Disintegrating Co., Case No. 600, followed. New England Ins. Co. v. Detroit & C. Nav. Co., Id. 10,154, disapproved.]

In admiralty. Heard April 10, upon plea to jurisdiction.

Browne & Vanslyck, for libellants.

A. Payne and J. C. Pegram, for respondent.

KNOWLES, District Judge. The two questions submitted to the court I would now dispose of at as little expense of time or labor as may be, consistently with approved judicial usage.

The cause is one of contract, civil and maritime, instituted in personam by Manchester, Hopkins & Co., of Providence, in the district of Rhode Island, against George Hotchkiss, of New Haven, in the district of Connecticut. The libellants allege damage to the value of two thousand dollars from a breach of contract to transmit a quantity of coal from Roundout, in the district of New York, to Providence, in July, 1867. The writ prayed for was granted on the 8th of March, 1871, returnable at a special court, to be holden on the 22d day of March, and was served by the marshal as shown by his return, in these words: "R. I. District. Providence, March 8, 1871. For want of the body of the within named George Hotchkiss to be by me found within this district, I have this day, at four o'clock in the afternoon, attached all the right, title, and interest that the said George Hotchkiss had in and to the schooner George Hotchkiss, her tackle, apparel, and furniture. Lyman Upham, Deputy U. S. Marshal."

On the 10th of March, the respondent filed in the clerk's office his claim in these words: "And now, on this 10th day of March, 1871, comes George Hotchkiss, and claims the schooner George Hotchkiss, attached by the marshal upon a warrant of arrest and attachment, as the property of the said respondent, as the owner thereof. George Hotchkiss." On the same day he also filed a stipulation for costs, together with a stipulation in conformity with the fourth rule in admiralty, whereupon the schooner was surrendered to him, and the attachment dissolved by operation of law. On the return day of the warrant (March 22), neither the respondent nor his counsel being present, with consent of the counsel for the libellants the respondent was allowed until the 28th of March to file his answer. Accordingly on the 28th, the respondent's "plea and answer" was filed, to which the libellants replied on the 1st of April, and upon these pleadings arise the questions now submitted to the court.

The respondent in his plea and answer, in the first place avers and insists that the court has no jurisdiction of the cause, because the defendant is not, nor was he at the filing of the libel, a citizen or resident of the district of Rhode Island, and the only service ever made of said libel was by attaching the goods and chattels of the defendant within the district of Rhode Island, the paragraph closing with these words: "Saving and reserving all benefit and advantage from said plea, and if overruled, the said defendant makes answer to said libel, and alleges and articulately propounds," etc. To this the libellants reply, "that the respondent's plea to the jurisdiction of the court ought not to be received and accredited, because, before the offering of said plea, said defendant had submitted himself and the cause to the jurisdiction of the court, by entering into and filing in the clerk's office of the court his stipulation to abide by and perform all the decrees of the court in said cause and had submitted himself and his cause to the jurisdiction of the court by filing an answer in said cause to the merits thereof." And to this the libellants, further replying, add that the plea is bad and insufficient in law.

In passing upon one of the two questions here presented, it seems necessary to say but little. Conceding that a defendant may waive a personal privilege, and estop himself from denying the jurisdiction of a court of admiralty, it still is incumbent on a libellant to show satisfactorily that a waiver was made by the defendant. This is not shown in this case. The filing of a stipulation, in order to release the vessel from attachment, I cannot regard as a waiver of any right or ground of defence to the suit; and as in this "answer and plea," filed on the return day of the writ, the day when and not prior to which he was entitled and bound to appear in court and answer, he sets forth his objections to the jurisdiction, I am constrained to adjudge that objection seasonably presented. The Bee [Case No. 1,219]. In neither text book nor reported case do I find aught inconsistent with this ruling. In regard to

the other of the two questions, though much might properly be said were it now for the first time presented for judicial action, little, as it seems to me, need be said in this connection. That question, it must be agreed, in its last analysis, is simply this: Is a libel suit in personam in admiralty a "civil suit," within the meaning of the eleventh section of the judiciary act of 1789? 1 Stat. 78.

Now, to this question distinctly raised, a negative answer was given in 1867, in an elaborate and exhaustive opinion of Judge Benedict of the Eastern district of New York, Atkins v. Fibre Disintegrating Co. [Case No. 600]; and an affirmative answer was given in 1870–71 by Judge Sherman of the Northern district of Ohio, in an opinion not less elaborate,—New England Ins. Co. v. Detroit & C. Nav. Co. [Id. 10,154]. There is reason to believe, too, that by the late Justice McLean of Ohio, by Judge Hoffman of California, by Judge Shipman of Connecticut, and by Judge Woodruff of the Second circuit, overruling Atkins v. Fibre Disintegrating Co. [supra], opinions in harmony with that of Justice Sherman have been delivered within the twenty years past. Of these six opinions, however, I have as yet been able to find only those of Judges Benedict and Sherman; but in these, I incline to believe, will be found embodied all the leading arguments and suggestions which give countenance to the conclusions to which, after full argument and deliberation, they respectively arrived. The weight of authority, numerically considered, it is seen, is in favor of the affirmative conclusion. But this, it is contended on behalf of the libellant, is not to be allowed to control my judgment. There are, it is argued, other facts to be considered: 1. That the admiralty rules, Nos. 1, 2, 3, and 4, framed by the supreme court, are consistent only with the rulings of Judge Benedict, and are, "without law and against law," if his construction of the statute of 1789 be not sound. 2. That in all the text-books and manuals of admiralty practice now in daily use by the profession, a service of a writ in admiralty by attachment of goods and chattels merely, irrespective of the residence or presence of the defendant, is treated and prescribed as a legal and sufficient service. 3. That throughout the United States, save in the districts of California, Ohio, Connecticut, and New York, a service by attachment only (irrespective of a defendant's residence) is held to be valid and effectual. 4. That from 1789 down to 1852, so far as can be learned, not even an intimation that such a service was objectionable or questionable, was ever heard from bench or bar; that as early as 1841—Clarke v. New Jersey Steam Nav. Co. [Case No. 2,859]—Justice Story, in his opinion in a Rhode Island cause, said, in ruling upon a cognate question: "Neither has it been doubted that the process of attachment well lies in an admiralty suit against the property of private persons, whose property is found within the district, although their persons may not be found therein, as well to enforce their appearance to the suit, as to apply it in satisfaction of the decree rendered in the suit. Ever since the elaborate examination (in 1825) of the whole subject in the case of Monroe v. Almeida, 10 Wheat. [23 U. S.] 473, this question has been deemed entirely at rest." And that in harmony with this dictum of Justice Story, as a declaration of settled law, has ever been the practice and usage throughout the circuit, whoever at the bar, whoever upon the bench. To the force of the libellant's reasoning on this point, I am constrained to yield. No decision of the supreme court or of the circuit judge of this district, in support of the defendant's plea to jurisdiction is produced, while dicta (if such merely it be), both from 10 Wheat. and Clarke v. New Jersey, etc., Co. [supra], are produced, impliedly overruling such a plea I find a practice and usage established in this district, in harmony with the dicta of judges to whose opinions I should be bound to defer, and in harmony with rules ordained by the supreme court, to which the force of statutes is universally conceded. If this practice and usage is to be abandoned as grounded on a misconception on the part of practitioners, text-writers, and judges, of a statute enacted in 1789, and still in force, I prefer that the decree to that effect shall issue from the supreme or the circuit court rather than from this.

A sufficient ground for a judgment overruling the defendant's "exceptive plea" is found in the usage and practice in this circuit from 1799 downward, and in the acts and declarations of its judges under the rules in admiralty to which I have referred, framed by the supreme court in 1812, and yet in full force. Such a ground, moreover, I do not hesitate to add, is found in the opinion of Judge Benedict in the case cited. That opinion, it is said, has been overruled by the learned judge of the Second circuit (Woodruff) and as we have seen, in certain districts, the adverse doctrine has been promulgated from the bench; but until better informed than I at present am as to the reasons assigned for dissenting from the conclusions of Judge Benedict, I am inclined to concur in and adopt those conclusions—especially these: Says Judge Benedict: "When the district courts were constituted courts of admiralty, they acquired the right to those methods and modes of proceeding which are the life of the admiralty, and among which has from the first been the power to seize property of defendants who cannot be found and to compel an appearance. This power is recognized by the admiralty rules as existing in these courts; it has never been conferred upon any other tribunal, and any intention to place it in abeyance, or to limit its exercise, when entertained by the law-making power, will, it may well be supposed, be clearly expressed, and not left to be inferred

from the use of a general and indefinite phrase. . . . If either form changes in the habits of commerce, or from modifications which are found necessary and become fixed in the practice of admiralty courts of other countries, or from changes in the spirit of our institutions, a limitation of the mode of exercising this power shall become necessary or proper, it is not to be doubted that the supreme court, as the high appellate court of admiralty, and as empowered by the act of 1842 [5 Stat. 516], will effect a change in this particular, as it most properly did in regard to the power of imprisonment."

The defendants' "exceptive allegation or plea" to the jurisdiction of the court is overruled, and the case will stand for hearing upon its merits.